# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINH N. NGUYEN,<br><br>　　　　　Plaintiff,<br>vs.<br><br>GEORGE GIURBINO, Warden,<br><br>　　　　　Defendant. | CASE NO. 05cv2287-WQH (WMc)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

On December 15, 2005, Linh N. Nguyen ("Petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 29 U.S.C. § 2254 ("Petition"). Petitioner challenges his state court conviction for one count of conspiracy to commit murder and seven counts of attempted premeditated murder, with true findings that Petitioner was armed with a firearm. [Lodgment 2 at 826-832.] Petitioner claims: 1) the trial court failed to adequately instruct the jury with respect to the overt act element of the conspiracy charge; 2) the trial court failed to stay the conspiracy count in accordance with the legislature's intent in California Penal Code § 654; 3) appellate counsel rendered ineffective assistance for failing to raise the overt act claim on appeal; 4) trial counsel rendered ineffective assistance at trial for failure to investigate an intoxication defense; 5) trial counsel rendered ineffective assistance at trial for failure to present an intoxication defense during trial or sentencing; and 6) that Petitioner is entitled to an evidentiary hearing and appointment of counsel.

This Report and Recommendation is submitted to United States District Judge William Q. Hayes. For the reasons stated herein, the Court **RECOMMENDS** that the Petition be **DENIED**.

**I.**

**STATE COURT PROCEEDINGS**

On November 19, 2001, Petitioner was convicted of one count of conspiracy to commit murder, and seven counts of attempted premeditated murder, with true findings that Petitioner was armed with a semi-automatic weapon. CAL. PENAL CODE §182(a), 187(a), 189, 664; Lodgment 2 at 826-832.  On March 8, 2002, Petitioner was sentenced to a term of twenty-six years to life, and consecutively, to a term of life with the possibility of parole. [Lodgment 2.]

Petitioner's brother, Cuong Nguyen, was prosecuted and convicted along with Petitioner for the same incident but on charges of greater severity. [Lodgment 2.]  Petitioner and his brother appealed  their convictions.  On April 4, 2003, the California Court of Appeal, Fourth Appellate District, Division One, in case number D039730, affirmed the convictions. [Lodgment 5.]

On May 5, 2003, Petitioner appealed his conviction to the California Supreme Court in case number S114957. [Lodgment 6.] On June 11, 2003, the California Supreme Court denied Petitioner's petition for review.  [Lodgment 7.]

Petitioner then filed a petition for writ of habeas corpus in the California Court of Appeal, Fourth Appellate District, Division One, case number D045082. [Lodgment 8.] On October 19, 2004, the petition for writ of habeas corpus was denied in a written opinion on the merits. [Lodgment 9.]

On September 21, 2005,  the California Supreme Court summarily denied Petitioner's writ of habeas corpus petition.  [Lodgment 11.]  On February 9, 2006, Petitioner filed a second petition for writ of habeas corpus in the California Supreme Court.  [Doc. No. 23.]  This petition raised three new claims. On October 11, 2006, the California Supreme Court denied the second habeas corpus petition. [ Doc. No. 23.]

**II.**

**FEDERAL PROCEEDINGS**

On December 15, 2005, Petitioner filed his Petition for Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254. [Doc. Nos. 1, 3 and 7.] On January 11, 2006, Petitioner filed a Motion for Stay and Abeyance, in order to exhaust certain state claims.  [Doc. No. 6.]  The Court denied

without prejudice Petitioner's Motion for Stay and Abeyance.  [Doc. No. 7.]

On July 17, 2006, Petitioner filed another Motion for Stay and Abeyance, after having exhausted his new claims in state court. [Doc. No. 11.] The Court denied as moot this second Motion for Stay and Abeyance under *Kelly v. Small*, holding that the Petition was no longer mixed because Petitioner had exhausted the relevant claims in state court. [Doc. Nos. 21 and 25.] The Court ordered Petitioner to file an Amended Petition incorporating Petitioner's three newly exhausted claims. [Doc. No. 25.]

On January 16, 2007, Petitioner filed an Amended Petition for Writ of Habeas Corpus. [Doc. No. 27.] On January 30, 2007, the Respondent filed a First Amended Answer. [Doc. No. 28.] On February 14, 2007, Petitioner filed his Traverse to the Amended Answer. [Doc. No. 29.]

### III.

### STATEMENT OF FACTS

Title 28, United States Code, section 2254, subsection (e)(1) provides: "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* The following facts are taken from the California Court of Appeal's opinion in Petitioner's direct appeal. [Lodgment 5, pp. 2-4.]

"This case arises from [co-defendant] Cuong's opening fire on a group of young people after a perceived verbal insult to [Petitioner] Linh.

On the night of February 17, 2001, Linh was outside of the Luc Huyen Cam café with his friend Hung Thi Le and Linh's younger brother. They were next to Linh's car listening to music and smoking. A group of people approached and started saying things which Linh interpreted as disrespectful.

Linh told Le he knew the people from school and had problems with them before. Linh was angry but kept saying he was going to "let this slide" until finally he could not take it anymore. Linh, Le, and Linh's younger brother got into the car and drove to a nearby laundromat. Linh said he was going to "blast 'em." Linh called his relative Huy and told him to come and bring along Linh's other brother Cuong. Huy arrived with Cuong, and Linh told Huy to take Le and Linh's younger brother

1 home.

2       Thai Thanh Pham, the most vocal in the taunting of Linh, was the only one in the group wearing a red jacket. Pham went home shortly after interacting with Linh and was not present during the shooting.

3       Meanwhile, Linh, accompanied by Cuong, returned in his car to the front of the café. Linh was driving and Cuong was in the front passenger seat. Some of Pham's friends were outside the café. They noticed Linh's car circling around in the parking lot and the defendants looking at them. Defendants drove up near the group and called out to them. Defendants accused the group of "talking shit," said they were looking for the "guy in a red jacket," and suggested they "go down the street and handle this." More words were exchanged between defendants and people in the group. One of the people in the group, Tri Trong Huynh, saw Cuong suddenly reach down and pull out a gun. Huynh yelled out that defendants had a gun. The people started ducking for cover behind cars and running inside the café and a nearby business. Cuong started shooting from the open window of the car and Linh sped away.

      Nine 9-millimeter shell casings were recovered from the scene. At least six areas were struck by bullets. There was a bullet hole in a door frame of the café and bullet holes in at least two cars parked in front of the café. One of the victims was hit near his eye by a piece of metal, causing slight bleeding.

      Sometime after the shooting, defendants drove to the home of their friend Buntham Sakngourn. Cuong asked Sakngourn if he could leave a gun at his house that was "hot" because he had used it. Sakngourn declined the request.

      The jury convicted the defendants of all charges, including conspiracy to commit murder (count one) and seven counts of attempted premeditated murder (counts two through eight). The conspiracy count did not allege a particular victim, but the People argued to the jury that the victim of that count was the "guy in red" (Pham). The seven attempted premeditated murder counts each named a particular victim who was at the scene of the shooting." [Lodgment 5, pp. 2-4.]

///

///

///

## IV.

## **STANDARD OF REVIEW**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The instant Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254, subsection (d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

When determining what constitutes "clearly established federal law" under section 2254(d)(1), federal courts look to United States Supreme Court holdings at the time of the state court's decision. *Lockyer v. Andrade*, 538 U.S. 63, 71- 72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Ninth Circuit law may also be considered "for its persuasive authority in applying (United States) Supreme Court law." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000), *overruled on other grounds*, *Lockyer*, 538 U.S. 63; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003).

A state court's decision is "contrary to" clearly established United States Supreme Court

1  precedent if (1) the state court applies a rule different from the governing law set forth in Supreme
2  Court cases, or (2) the state court confronts a set of facts that are materially indistinguishable from a
3  Supreme Court case, but still reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06, 412
4  (2000); *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *Clark*
5  *v. Murphy,* 331 F. 3d 1062, 1067 (2003). A state court decision does not have to cite to or even
6  demonstrate an awareness of clearly established Supreme Court precedent, so long as neither the
7  reasoning nor the result of the state court decision contradicts such precedent. *Early v. Packer*, 537
8  U.S. 3, 8 (2002).

9        A state court decision may involve an "unreasonable application" of Supreme Court precedent,
10 "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but
11 unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407.
12 Alternatively, an unreasonable application may be found, "if the state court either unreasonably
13 extends a legal principle from [Supreme Court] precedent to a new context where it should not apply
14 or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *see also*,
15 *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark*, 331 F.3d at 1067. An unreasonable application
16 of federal law requires the state court decision to be more than incorrect or erroneous. *Lockyer*, 538
17 U.S. at 76. Instead, the state court's application must be "objectively unreasonable." *Id.*

18       Where there is no reasoned decision from the state's highest court, the district court "looks
19 through" to the last reasoned state-court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991);
20 *Van Lynn v. Farmon*, 347 F.3d 735 (9th Cir. 2003). However, if the dispositive state court order does
21 not "furnish a basis for its reasoning," the federal court considering the habeas petition must conduct
22 an independent review of the record to determine whether the state court unreasonably applied
23 controlling federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000); *Himes v. Thompson*,
24 336 F. 3d 848, 853 (9th Cir. 2003).

## V.

## DISCUSSION

**A.     Petitioner Is Not Entitled To Relief On The Basis Of Claim One.**

      Petitioner argues the trial court improperly labeled two actions undertaken by defendants as

overt acts in a jury instruction listing the elements of conspiracy. Petitioner further asserts that as a result of improperly defining these actions as overt acts, a reviewing court is unable to determine that the verdict against Petitioner was based on at least one of the four remaining actions which were properly designated as overt acts. Petitioner alleges that the trial court prejudicially erred and the state appellate court unreasonably applied the harmless error standard articulated in *Chapman v. California*, 386 U.S. 18 (1967). [Doc. No. 1 at 6(i)-6(x); Doc. No. 29-2 at 1.].

Specifically, the trial record indicates the court instructed the jury that Petitioner Linh and co-defendant Cuong were alleged to have committed six overt acts in furtherance of a conspiracy to commit murder: 1) arming themselves with a nine-millimeter handgun; 2) driving to the café; 3) asking the people in front of the café "where the guy in the red jacket was;" 4) firing nine shots from the handgun at the seven (named) victims; 5) driving away from the café; and 6) driving to Sakngourn's home with the purpose of hiding the gun. Lodgment 5 at 4.

On appeal, the state appellate court found: (1) there was no error in instructing the jury that driving away from a drive-by shooting could be an overt act; and (2) as a matter of law, the sixth alleged overt act of attempting to hide the gun was not done in furtherance of a conspiracy and therefore should not have been included in the jury instructions. Lodgment 5 at 5-6. The Court of Appeals explained, however, that the improper inclusion of the sixth act was harmless error beyond a reasonable doubt:

> "When the jury is given legally erroneous instructions on an element of an offense, the error is evaluated under the harmless beyond a reasonable doubt standard. (*People v. Harris* (1994) 9 Cal.4th 407, 416, 424; see also *People v. Guiton* (1993) 4 Cal.4th 1116, 1130 [instruction allowing conviction on legally erroneous theory is harmless error if other portions of verdict show jury necessarily found defendant guilty on proper theory].) In counts two through eight, the jury found that defendants attempted to murder the people in front of the café. Because the evidence of the attempted murders was based on the shooting at the café, the jury necessarily found the overt act of "firing nine shots from the handgun" to be true. Given that the attempted murder verdicts show the jury found the existence of a proper overt act, the inclusion of an improper overt act in the jury instructions was harmless error beyond a reasonable doubt."

Lodgment 5 at 7.

Petitioner's claim [that the appellate court incorrectly interpreted California law in holding that driving away could be an overt act in furtherance of conspiracy to murder which was carried

out by opening fire from a car] does not state a claim for habeas relief. *See e.g Estelle v. McGuire,* 502 U.S.62, 71-72 (1991)*; Mitchell v. Goldsmith*, 878 F.2d.319, 324 (9th Cir. 1989) ("In the absence of a federal constitutional violation, no relief can be granted even if the instruction might not have been correct as a matter of state law.")

The Court does, however, have a basis to grant relief where the state court has determined a constitutional error to be harmless, which the state appellate court did here with respect to the improperly included sixth overt act of hiding the gun. In order to grant relief, the federal court must determine: (1) that the state court's decision was contrary to or an unreasonable application of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Inthavong v. LaMarque*, 420 F.3d 1055, 1059 (9th Cir. 2005).

### i. The State Appellate Court's Decision Was Neither Contrary To, Nor An Unreasonable Application Of Supreme Court Precedent.

Here, the state appellate court applied *Chapman's* harmless error test in order to determine the effect of the trial court's erroneous jury instruction as to the sixth overt act. Lodgment 5 at 7. The *Chapman* harmless error standard is traditionally applied to analyze cases where there has been a misinstruction on the elements of an offense. *See Chapman v. California*, 386 U.S. 18, 24 (1967); *Pope v. Illinois,* 481 U.S. 497 (1987) (harmless error standard applied to instruction misstating an element of the offense); *Rose v. Clark*, 478 U.S. 570 (1986) (harmless error standard applied to instruction containing erroneous burden shifting presumption). In addition to applying the recognized standard used to analyze erroneous jury instructions, the state appellate court specifically cited to a state court case in its opinion, which follows the United States Supreme Court's reasoning as articulated in *Yates v. Evatt,* 500 U.S. 391 (1991) overruled on other grounds, *Estelle v. McGuire*, 502 U.S. 62, n.4 (1991). [Lodgment 5 at 7; *People v. Harris*, 9 Cal. 4th 407 (1994).] Specifically, the Court in *Yates* elaborated on the inquiry a reviewing court must make when applying the harmless-error standard to cases where, like here, the jury has been misinstructed on an element of the charged offense. From a review of the record, as well as federal precedent where there has been a misinstruction on the elements of an offense, it is clear that the

1  state appellate court applied the correct controlling law and reasoning to the circumstances of
2  Petitioner's case.  Consequently, it is recommended that the Court find the state appellate court's
3  analysis under *Chapman*'s harmless error standard neither contrary to, nor an unreasonable
4  application of, Supreme Court precedent on this issue.

5        **ii.**      **Petitioner Has Not Suffered Prejudice As A Result Of The Erroneous**
6               **Instruction**

7  In order to demonstrate prejudice under *Brecht*, Petitioner must show that the constitutional
8  error had a "substantial and injurious effect" on the jury's verdict.  *Brecht v. Abrahamson*, 507
9  U.S. 619, 623 (1993).  Petitioner has not met this burden.  As explained by the state appellate
10 court, the erroneous jury instruction did not have a substantial or injurious effect on the jury's
11 verdict because in order for the jury to convict Petitioner on the other seven counts of attempted
12 premeditated murder, the jury had to have found an overt act of "firing nine shots from the
13 handgun" to be true.  Accordingly, the error of including the drive to Sakngourn's home for the
14 purpose of hiding the gun was unimportant in light of the fact that the jury considered and found to
15 be true a proper overt act, which was included in the erroneous jury instruction.  *Yates v. Evatt,*
16 500 U.S. 391 at 403 (1991) ("To say that an error did not contribute to the verdict, is rather, to find
17 that error unimportant in relation to everything else the jury considered on the issue in question, as
18 revealed in the record.") Had the erroneous element been excluded, the jury would have reached
19 the same verdict.  In other words, inclusion of the erroneous element would not have changed the
20 verdict.  Consequently, it is recommended that the Court find Petitioner suffered no prejudice as a
21 result of the jury misintruction.

22 **B.**    **Petitioner Is Not Entitled To Relief On The Basis Of Claim Two.**

23 In his second claim, Petitioner argues he is entitled to relief based upon the trial court's
24 failure to stay the conspiracy count in accordance with CA PENAL CODE § 654. [Doc. No. 1 at 7-
25 7(v).] Petitioner claims the court imposed multiple punishments for the same offense.  Petitioner
26 argues his Constitutional right to due process under the 5th and 14th Amendments have been
27 violated, and cites *Wasko v. Vasquez*, 820 F.2d 1090, 1091 n. 2 (9th Cir. 1987) in support. [Doc.
28

No. 1 at 7(v).][1]

A petitioner "has a protected liberty interest, under the Fourteenth Amendment, against excessive punishment; he may be deprived of his liberty only to the extent authorized by state statute." *Whalen v. United States*, 445 U.S. 684 (1980). The guarantee against double jeopardy "protects against multiple punishment for the same offense." *Plascensia v. Alameida*, 467 F.3d 1190, 1204 (9th Cir. 2006).

Here, the trial court ruled that the prohibition of dual punishment in California Penal Code § 654 did not prevent imposition of a sentence for both the conspiracy conviction and the attempted murder convictions because the intended victim of the conspiracy was not one of the victims of the attempted murders. Lodgment 6 at 8; Lodgment 2, Vol. dated March 8, 2002 at 8-11, 13-14.

On appeal, the California Court of Appeal, Fourth District, Division One conducted an in-depth review of the trial court's application of California Penal Code § 654(a) to Petitioner's case explaining;

> If the offenses are incidental to one objective, the defendant may be punished for only one offense. [*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.] However, if the defendant acted with multiple, independent criminal objectives, he may be punished for each of those objectives even though the violations share common acts or were parts of an otherwise indivisible course of conduct. (*Ibid.*)
> The issue of whether the defendant entertained multiple criminal objectives is a question of fact for the trial court,... [*Id.*] Multiple criminal objectives may be shown based on an intent to harm two different victims. (*Id.* at pp.1133, 1136.) Moreover, the courts recognize that a defendant is legitimately punished for each victim of his violence even when the violence arises from a single act. (*In re Tameka C.* (2000) 22 Cal.4th 190, 200.)

---

[1] Respondent contends Claim Two does not present a federal question and is not exhausted. Doc. No.28-2 at 10. However, Petitioner's claim does present a federal question because it alleges that multiple punishments for the same offense have resulted in a constitutional violation. Doc. No. 1 at 7-7(v). Petitioner also cites to federal precedent in support of these allegations. Finally, Respondent's assertion that the claim is unexhausted is unsupported by the record. Lodgment 3 at 30-34; Lodgment 6 at 8-11. The Lodgments indicate that Petitioner expressly presented this as a federal claim to the state's appellate and supreme court alleging a violation of "...appellant's federal constitutional right to due process under the Fifth and Fourteenth Amendments of the federal constitution (Wasko v. Vazquez (9th Cir. 1987) 820 F.2d 1090, 1091, fn. 2.)." Lodgment 3 at 34; Lodgment 6 at 10.

Lodgment 5 at 10.

Petitioner was convicted of one count of conspiracy and seven counts of attempted premeditated murder, six of which were stayed by the trial court pursuant to California Penal Code § 654. [Lodgment 2, March 8, 2002 Vol. at 11; Lodgment 5 at 10-11, 13-14.] Each of the seven attempted murder counts identified one of the victims present in front of the café as the objective of that separate count. [Lodgment 5.] Separately, the object of the conspiracy count was to murder Pham (the male in the red jacket), who was not one of the victims present in front of the café. [Lodgments 1, 2 and 5.] Because Petitioner was convicted of eight separate offenses representing petitioner's actions with respect to eight separate individuals (Pham and the seven bystanders at the café), the protections against dual punishment for the same offense provided by California Penal Code § 654 and the United States Constitution are inapplicable. Accordingly, it is recommended that Petitioner's Second Claim be DENIED.

**C.     Petitioner Is Not Entitled To Relief On The Basis Of Claim Three.**

In his third claim, Petitioner contends his appellate counsel rendered ineffective assistance by failing to raise on appeal his claim that overt act number four was erroneously included in the conspiracy jury instruction. [Doc. No. 1 at 8.] Specifically, Petitioner states that appellate counsel raised challenges to the inclusion of overt acts five and six in the conspiracy jury instruction, but failed to challenge the inclusion of overt act four. [Doc. No. 1 at 8.]

In order to prevail on a claim for ineffective assistance of counsel, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness, and that he suffered prejudice as a result of the attorney's substandard performance. *Strickland v. Washington*, 466 U.S. 668, 688-692 (1984).

      **i.     No Indication of Deficient Performance**

Judicial scrutiny strongly presumes that the attorney's conduct falls within the range of reasonable professional conduct. *Id.* at 689. "When examining attorney conduct, a court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct...." *Nix v. Whiteside*, 475 U.S. 157, 165 (1986).

1    From, the record, it appears that Petitioner's attorney raised claims challenging overt acts
2 five and six specifically because they were arguably undertaken *after* completion of the underlying
3 crime and thus, as a matter of law would not be in furtherance of the crime. [ Lodgment 3 at 18-
4 23.] In contrast, overt act four, defendants' action of "fir[ing] nine shots from the handgun at the
5 seven (named) victims," was not undertaken after or apart from the commission of the underlying
6 crime of attempted murder.

7    Petitioner's attorney made a strategic decision, based on sound state and federal precedent,
8 to object only to those overt acts that could be reasonably distinguished in time from the
9 commission of the underlying crime. [Lodgment 3 at 18-23.]   Given the requirement that an overt
10 act be committed *before* completion of the intended offense, a challenge by Petitioner's attorney to
11 Defendants' actions of "fir[ing] nine shots from the handgun at the seven (named) victims" would
12 have lacked merit.  Appellate counsel is not ineffective for failing to raise an argument that would
13 prove to be futile.  Morrison v. Estelle, 981 F.2d 425, 429 (9th Cir. 1992).  Accordingly, it is
14 recommended the Court find that appellate counsel's decision to abstain from raising the issue of
15 overt act four on appeal was not outside the realm of reasonable professional conduct.

16 **ii.    Not Prejudicial**

17    Having determined that appellate counsel's performance did not fall outside a wide range
18 of acceptable professional assistance, the Court need not decide whether appellate counsel's
19 decision prejudiced Petitioner under *Strickland*'s second prong.

20 **D.   Petitioner Is Not Entitled To Relief On The Basis Of Claims Four and Five.**

21    In his fourth and fifth claims, Petitioner argues ineffective assistance of trial counsel based
22 on trial counsel's alleged failure to investigate or present an intoxication defense at trial and during
23 sentencing. [Doc. No. 27 at 6-10; 12-16.]  Petitioner contends that if his trial attorney presented
24 such evidence, it would have negated the mental state necessary to commit first degree murder or
25 attempted murder as well as mitigated the penalties imposed at sentencing. [*Id*.]  Specifically,
26 Petitioner alleges *without support* that his trial attorney did no research to determine whether the
27 introduction of evidence regarding intoxication was an available defense at trial. [Doc. No. 27 at
28 8-9.] Petitioner also opines that trial counsel should have sought the appointment of an expert

witness, such as a psychiatrist, . [Doc. No. 29 at 10.]

Petitioner's claim that his trial attorney was ineffective for failing to investigate an intoxication defense was denied summarily by the California Supreme Court on October 11, 2006 in case number S141045.[2] Summary denials are considered to be an adjudication on the merits even if they do not reference a federal claim or provide analysis. *Luna v. Cambra*, 306 F.3d 954, 960, *amended* 311 F. 3d 928 (9th Cir. 2002). Where a state court provides no rationale for its denial, "Federal habeas review is not *de novo*..., but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

Petitioner must show that his attorney's performance fell below an objective standard of reasonableness, and that Petitioner suffered prejudice as a result of the attorney's substandard performance. *Strickland v. Washington*, 466 U.S. 668, 688-692 (1984).

### i. No Deficient Performance

Judicial scrutiny strongly presumes that the attorney's conduct falls within the range of reasonable professional conduct. *Id*. at 689. "Once counsel reasonably elects to pursue one defense theory, 'the need for further investigation [of the other theory] may be considerably diminished or eliminated altogether.'" *Franklin v. Johnson*, 290 F.3d 1223, 1235-1236 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694).

Here, the record indicates that trial counsel's election to abstain from pursuing a voluntary intoxication defense was a reasonable strategy designed to paint Petitioner in the best light possible for the purposes of trial and sentencing. *Iaea v. Sunn*, 800 F.2d 861, 865, n.4 (9th Cir. 1986). In keeping with this strategy, Petitioner's attorney requested that the trial judge bar references to Petitioner's prior arrest for suspicion of possessing marijuana for sale. [Lodgment 2, Vol.2 at 33-34.] In addition, both Petitioner's attorney and the attorney for Petitioner's co-defendant successfully argued to exclude evidence of moral turpitude and prior misconduct. [Lodgment 2, Vol.2 at 13-54.] Also, references to: (1) Petitioner's confession of guilt to his then-

---

[2] *See* Supreme Court of California website at www.courtinfo.ca.gov/courts/supreme - "Case Information".

girlfriend was rendered inadmissible as a result of the trial attorney's decision to keep Petitioner from testifying; (2) Petitioner's taking and refusing to complete a polygraph were excluded; and (3) defendants' gang associations were excluded. *Id.*

Petitioner's trial attorney also attempted to bolster Petitioner's character at sentencing, a strategy which would have been at odds, if not in direct conflict, with a concurrent argument that Petitioner's consumption of illegal substances mitigated his behavior. Specifically, Petitioner's trial attorney filed a statement in mitigation with an attached letter from Elizabeth Tate, the Executive Director of the Florence Griffith Joyner Youth Foundation. [Lodgment 2, Vol.2 at 1-2.] Petitioner's mother addressed the court during sentencing, stating, "My son...is very obedient...." [Lodgment 2, Vol.2 at 5.] In addition, Petitioner's trial attorney argued to the court: "We basically had one set of abhorrent behavior. I think that is something that could happen with respect to a person of Linh's youth and inexperience. We basically have one young man whose only record blemish, if you will, is a single juvenile matter, which he successfully completed." [Lodgment 2, Vol.2 at 2-3.] Petitioner has failed to show that his attorney's strategy to bolster his character and abstain from introducing evidence of intoxication fell below an objective standard of reasonableness. Accordingly, it is recommended that the Court find no deficient performance on the part of Petitioner's trial counsel.

### ii. Not Prejudicial

Even assuming, *arguendo*, that trial counsel's performance was unreasonable, Petitioner has also failed to prove actual prejudice. The attorney's error must be so serious that the conviction or sentence is unreliable. *Strickland*, at 687. Petitioner must show with reasonable probability that, but for counsel's unprofessional error, the conviction or sentence would have been different. *Id*. at 694. A "reasonable probability" requires a probability sufficient to undermine the outcome, but Petitioner's burden does not rise to the level of preponderance. *Id*. at 694.

Here, the record does not establish a reasonable probability that Petitioner's consumption of alcohol and hashish-soaked marijuana actually left him lacking capacity to form the specific intent requisite to commit conspiracy and attempted murder.

Petitioner was convicted under CA PENAL CODE § 187(a) and § 182(a) (conspiracy to

commit murder), CA PENAL CODE § 664 and § 187(a) (seven counts of attempted murder), CA PENAL CODE § 189, and CA PENAL CODE § 12022(a)(1) (vicariously armed with firearm). [Doc. No.27 at 2.] California's voluntary statute governs these, providing:

> (a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate capacity to form any mental states for the crime charged, including, but not limited to purpose, intent, knowledge, premeditation, deliberation, or malice aforethought....
> (b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent....

CA PENAL CODE § 22. A voluntary intoxication instruction is not available in California unless there is "substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's 'actual formation of specific intent.'" *People v. Roldan*, 35 Cal.4th 646, 715 (2005), *cert. denied*, 126 S. Ct. 570 (2005) (quoting *People v. Williams*, 16 Cal.4th 635, (1997)).

There is no evidence in the record that on the day of the shooting Petitioner's capacity was sufficiently diminished to undermine his ability to form a specific intent. To the contrary, there is evidence that Petitioner maintained the capacity to perform several actions leading up to the shooting. Specifically, Petitioner, after drinking alcohol and smoking drugs, drove from a barbecue to the Luc Huyen Cam Café. [Doc. No. 27 at Decl. of Nguyen, Tu Ngoc.] No one present objected to Petitioner driving, and witness Tu and another individual even rode as passengers, trusting Petitioner's ability to drive. [Doc. No. 27 at Decl. of Nguyen, Tu Ngoc.] Initially, Petitioner had enough self-control to restrain his anger towards Pham, who he felt was making insulting remarks. [Lodgment No. 5 at 2-5; Statement of Facts, *supra*.] After feeling "disrespected", Petitioner drove to the laundromat with passengers and stated he was going to "blast em" in response to the perceived disrespect. *Id.* Petitioner was able to dial the phone, communicate with his brother, Cuong, and ask him to bring a gun. *Id.* Petitioner drove the car back to the Café and circled the parking lot. *Id.* Petitioner drove away from the Café, eventually returning home. *Id.* It is clear from the record that despite his intoxication, Petitioner had the

capacity to make decisions as well as communicate with, and give directions to, his family and friends about his intentions. Moreover, Petitioner had the capacity to maintain control of the motor vehicle used to carry out the shooting; he did not crash the car or alert a traffic patrolman. There is nothing in the Supplemental Petition, police reports or the Tu declaration submitted by Petitioner which demonstrate that Petitioner's voluntary intoxication had any effect on his ability to form the requisite intent. [*See* Doc. No. 27 at Exhs. 1-2 and.Tu Ngoc Nguyen's "Declaration".] Accordingly, an intoxication defense would have been unavailable to Petitioner at the time of trial.

Similarly with respect to sentencing, the presentation of intoxication evidence would not have mitigated the penalties Petitioner received. In California, conspiracy to commit first degree murder carries a mandatory penalty of 25 years to life in state prison. *See* Cal. Penal Code § 182(a), 190(a). Willful, premeditated attempted murder carries a mandatory penalty of life in prison with the possibility of parole. Cal. Penal Code § 664(a). Vicarious use of a firearm carries a mandatory penalty of a consecutive one-year term in state prison. Cal. Penal Code § 12022(a). Petitioner is currently serving a term of 26 years to life, consecutive to a term of life with the possibility of parole. Petitioner is serving the only sentence he could have received. Accordingly, Petitioner was not prejudiced by trial counsel's failure to present evidence of intoxication at trial or at sentencing.    It is therefore recommended that the Court deny Petitioner's fourth and fifth claims for ineffective assistance of counsel.

**E.     Petitioner is Not Entitled to an Evidentiary Hearing.**

Petitioner requests an evidentiary hearing. Under 28 U.S.C. § 2254(e)(2), as amended by AEDPA, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis to support the petitioner's claims was developed in the state court. *Williams (Michael) v. Taylor*, 529 U.S. 420, 432 (2000); *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). If a factual basis was developed in the state court, an evidentiary hearing is discretionary and is not necessary when the facts alleged, even if proven, would not entitle Petitioner to habeas relief. *Baja*, 187 F.3d at 1078-79.

If a factual basis for a particular claim was not developed in the state court, the Court must ascertain whether the failure to develop the factual basis of the claim in state court was attributable

to Petitioner. *Williams*, 529 U.S. at 432 ("[A] failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" as "only a prisoner who has neglected his rights in state court need satisfy these conditions.").

The Court does not have discretion to conduct an evidentiary hearing unless Petitioner satisfies the requirements of 28 U.S.C. § 2254(e)(2), which provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2)(West Supp. 2007).

The Supreme Court has interpreted § 2254(e)(2) as requiring a petitioner who has failed to develop the factual basis of a claim in state court to establish that: (1) any efforts to discover the facts would have been in vain; *and* (2) that he has a "convincing claim of innocence." *Williams (Michael)*, 529 U.S. at 435 (2000).

### i. Previously Unknown Factual Predicate.

In its December 19, 2006 Order Adopting Report and Recommendation, this Court found that "Petitioner's new claims have a factual predicate not known to him at the time he initially filed his federal petition–specifically, police reports he only received after filing his federal petition." [Document No. 25 at 3.] Thus, the first prong towards an evidentiary hearing is satisfied under 28 U.S.C. §2254(e)(2)(A)(ii). We now turn to whether Petitioner meets the second prong: sufficiency under 28 U.S.C. §2254(e)(2)(B).

### ii. No Facts Sufficient To Undermine Conviction.

An evidentiary hearing is not necessary when the facts alleged, if proven, would not entitle Petitioner to habeas relief. *Williams*, 529 U.S. at 432 (2000); *Baja*, 187 F.3d at 1078-79. Here, the facts alleged by Petitioner, even if true, would not entitle him to habeas relief. Specifically, as


1  discussed in Section D above with respect to claims four and five: (1) the record indicates that voluntary intoxication is not available to Petitioner as a defense; (2) the decision of Petitioner's trial attorney to refrain from presenting an intoxication defense was reasonable; and (3) Petitioner has failed to show a reasonable possibility that further evidence of Petitioner's voluntary intoxication would undermine confidence in his conviction. For these reasons, and for the reasons set forth above in connection with Petitioner's individual claims, it is recommended that the Court find an evidentiary hearing is neither required nor necessary, and therefore DENY Petitioner's request for an evidentiary hearing.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:

1. **DENYING** Petitioner's Petition for Writ of Habeas Corpus; and

2. **DENYING** Petitioner's Request for an Evidentiary Hearing.

**IT IS ORDERED** that no later than **July 9, 2007** any party to this action may file a written objection with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 10, 2007**. The parties are advised that failure to file objections within the specified time may result in a waiver of the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *see also Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**

DATED: June 7, 2007

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge, U.S. District Court

cc:

HON. WILLIAM Q. HAYES, UNITED STATES DISTRICT JUDGE
PRISONER *PRO SE*
ALL COUNSEL AND PARTIES OF RECORD